# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DONNA C.**[1], <br><br> Plaintiff, <br><br> v. <br><br> **ANDREW M. SAUL,** Commissioner of Social Security, <br><br> Defendant. | Case No. 3:18-cv-01415-SI <br><br> **OPINION AND ORDER** |

Richard F. McGinty, MCGINTY & BELCHER, ATTORNEYS, P.O. Box 12806, Salem, OR 97301. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Alexis L. Toma, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Donna C. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for DIB and SSI on October 10, 2013. AR 13. Plaintiff alleges disability beginning on October 10, 2013. Plaintiff was born on June 27, 1969 and was 42 years old on the alleged disability onset date. Plaintiff alleged disability due to obesity, degenerative joint disease of the right knee, depression, anxiety, chronic obstructive pulmonary disease ("COPD"), cognitive disorder, post-traumatic stress disorder, panic disorder with agoraphobia, back pain, neuropathic pain, atrial fibrillation, and hypertension. AR 16. Plaintiff's claims were denied initially, on May 8, 2014, and upon reconsideration on August 21, 2014. AR 13. Plaintiff filed a written request for a hearing, and a hearing was held on October 18, 2016. Plaintiff appeared and testified, as did Robert Gaffney, an impartial vocational expert. A supplemental hearing took place on May 10, 2017, at which Plaintiff, John B. Nance, an impartial medical expert, and Paul K. Morrison, an impartial vocational expert, all testified. AR 13. On May 31, 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the commissioner. AR 1-4. Plaintiff now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

PAGE 3 – OPINION AND ORDER

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018. Thus, for Plaintiff's DIB claim, she must establish disability on or before that date. The ALJ then conducted the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2011. AR 15. Although Plaintiff reported work activity until at least early 2014, the records do not reflect any documented wages. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative joint disease of the right knee, COPD, cognitive disorder, mood dysregulation disorder, anxiety disorder, panic disorder with agoraphobia, and post-

PAGE 5 – OPINION AND ORDER

traumatic stress disorder. The ALJ found that Plaintiff's other medically determinable impairments caused only transient and mild symptoms and limitations, were well controlled with treatment, did not persist for twelve continuous months, and did not have greater than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. The ALJ therefore found the other impairments to be non-severe. AR 16. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. AR 16.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can occasionally climb, stoop, kneel, crouch, and crawl. The claimant should have no concentrated exposure to workplace hazards. The claimant should have no exposure to noxious fumes and odors. The claimant can perform simple, entry-level work in a routine environment with less than occasional interaction with the public and occasional interaction with coworkers. The claimant should not engage in teamwork.

AR 19-20.

At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a salvager. AR 26. At step five, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 27.

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) giving less weight to the opinion of Dr. Charity Benham relative to Dr. Charles Reagan and medical expert Dr. John Nance, (2) the ALJ did not consider Plaintiff's sleep disorder a severe impairment, and (3) not giving sufficient weight to GAF assessments.

## A. Dr. Benham

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are

PAGE 7 – OPINION AND ORDER

supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

The ALJ gave less weight to Dr. Benham's opinion and relatively more weight to Dr. Nance and to Dr. Reagan. The ALJ noted that Dr. Benham's opinion was inconsistent with the other evidence in the record and inconsistent with Plaintiff's reported activities and functioning. For example, during the examination with Dr. Benham, Plaintiff described hallucinatory experiences, but Plaintiff had never mentioned hallucinations to any other healthcare providers in the medical record. Although Plaintiff has been diagnosed with agoraphobia, the ALJ noted that she previously ran a business that involved leaving the house and she reported driving her son to school, to a carnival, and driving her RV to various campgrounds. AR 24. Dr. Nance testified that Dr. Benham's reported IQ scores in the 70s were "implausible" considering that Plaintiff has a GED and went to college. Plaintiff described herself as a college graduate and an accountant by trade and described managing a pallet-selling business, which the ALJ found inconsistent with the degree of intellectual and concentration deficits that Dr. Benham found. AR 25; 488. The ALJ gave great weight to the opinion of Dr. Nance, giving it more weight than the opinion of Dr. Benham. Dr. Nance reviewed Plaintiff's entire medical record and testified that Plaintiff had only mild limitations in understanding, remembering, and applying information, moderate limitation in interacting with others, moderate limitation in concentration, persistence, and pace, and moderate limitation in adaptation and managing oneself. AR 24.

Dr. Nance's opinion is more consistent with Plaintiff's recent work history and Plaintiff's ability to care for her son, drive a car, and play computer games, as well as the fact that Plaintiff has typically responded well to medication. AR 25; 439. These inconsistencies with the medical record and Plaintiff's level of functioning are specific and legitimate reasons to give Dr. Benham's opinion less weight. *Bray*, 554 F.3d at 1228; *Tommasetti*, 533 F.3d at 1040.

As between the conflicting opinions of Dr. Nance and Dr. Benham, the ALJ was entitled to give Dr. Nance more weight. Dr. Benham's opinion is inconsistent with the objective evidence in the record, including the fact that Plaintiff drives a car, plays computer games, took care of her son and daughter, and managed a pallet business until at least 2014. See AR 401-02; 588. The ALJ did not, as Plaintiff contends, rely on her activities to find that she was not disabled, but rather, properly, relied on Plaintiff's activities to the extent they were inconsistent with the limitations assessed by Dr. Benham and consistent with the limitations assessed by Drs. Nance and Reagan as a reason to give less weight to Dr. Benham's opinion and more weight to the opinions of Drs. Nance and Reagan. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Dr. Nance's opinion is also consistent with Dr. Reagan's opinion, and both are inconsistent with Dr. Benham's opinion. Dr. Reagan concluded that Plaintiff had mild mental limitations, which is more consistent with her ability to take care of herself, take care of her children, complete college courses, and her work history. AR 25. The ALJ took these opinions into account when finding that Plaintiff was capable of no more than simple, entry-level work in a routine environment with limited social interaction and no teamwork.

The ALJ's decision to give less weight to Dr. Benham than Drs. Reagan and Nance, is supported by specific and legitimate reasons. Thus, the decision to omit Dr. Benham's limitations from the RFC was not error.

**B. Plaintiff's Sleep Impairments**

Plaintiff argues that the ALJ erred because he did not properly evaluate Plaintiff's sleep disorder. The ALJ acknowledged that Plaintiff had reported sleep impairments, but Plaintiff has never been diagnosed with any sleep impairments. The only mention in the record of Plaintiff's sleep disorder is in Plaintiff's self-described symptoms to Dr. Reagan. Sleep disorder is not mentioned in Plaintiff's DIB application, nor did Plaintiff mention sleep disorder when she

testified at the hearing before the ALJ. Plaintiff contends that her sleep disorder causes her to have a worsened mood. Although the ALJ did not evaluate whether sleep disorder was a severe or non-severe impairment, any such error was harmless because the ALJ did find that Plaintiff had severe impairments at step two, *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006), and the ALJ considered the impact of Plaintiff's mood regulation in formulating the RFC. AR 16; 23; 25.

**C. GAF Scores**

The ALJ gave little weight to the GAF scores because a GAF score is based on factors that have no relevance to SSA disability assessment and is based primarily on temporary situational stressors. GAF assessment is not included in the new DMS manual and is not considered a valid way of measuring the severity of a disability. In some circumstances, GAF scores may be useful, but a GAF score is not by itself determinative of whether a person's impairments are disabling. *Garrison*, 759 F.3d at 1002 n. 4. The DSM-V, published in 2013, dropped use of the GAF scale finding it not sufficiently reliable. *See Garang v. Berryhill*, 2019 WL 2290512, at *4 (D. Ariz. May 6, 2019). The ALJ did not err by assigning little weight to Plaintiff's GAF score.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 12th day of August, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge